**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

RECEIVED
2020 MAR 16 P 1: 17
DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

TONY MARSHALL,

Plaintiff,

v.

COOPER TIRE & RUBBER COMPANY, LLC, AND JERNIGAN AUTO SALES & SALVAGE, INC.,

Defendants.

CASE NO. 2:20-cv-186

(Removed from the Circuit Court of Bullock County, Alabama Case No. 09-CV-2018-000026)

**NOTICE OF REMOVAL**

Defendant Cooper Tire & Rubber Company ("Cooper Tire") hereby gives notice of the removal of this civil action from the Circuit Court of Bullock County, Alabama, to the United States District Court for the Middle District of Alabama, Northern Division. As grounds for this removal, Cooper Tire states:

**FACTUAL AND PROCEDURAL BACKGROUND**

This product liability case arises from a single vehicle accident that occurred on May 8, 2017, on Interstate 65 in Butler County, Alabama.[1] Plaintiff Tony Marshall was driving a 2001 Toyota Tundra ("Tundra") northbound when he lost control, drove into the median, and rolled over multiple times. Plaintiff claims to have suffered "permanent" and "devastating" injuries as a result of the accident including a broken neck and "great" mental anguish.[2]

Plaintiff, a resident of Bullock County, Alabama, initiated this case on November 6, 2018, by filing a Complaint in the Circuit Court of Autauga, Alabama, which had no connection to the

[1] Complaint at ¶ 27, attached as Ex. A.
[2] Id. at ¶ 31.

accident or parties. Plaintiff immediately moved to transfer the case to Bullock County as the filing in Autauga County was a mistake. Plaintiff's motion to transfer was granted and this case transferred to Bullock County on November 13, 2018.

Plaintiff's Complaint alleges that the accident was caused by a design or manufacturing defect in the left rear tire. Plaintiff named both Cooper Tire and Jernigan Auto Sales & Salvage, Inc. ("Jernigan's") as defendants. The Complaint alleged Cooper Tire designed, manufactured and distributed the tire. The Complaint alleges Jernigan's sold the tire to the plaintiff.[3]

The tire made available to Cooper Tire as having been on the left rear position of the Tundra at the time of the May 8, 2017, accident was manufactured at Cooper Tire's Texarkana, Arkansas plant. It is embossed with a tire identification number of UT0K1A61212 required by the United States Department of Transportation. Among other things, this indicates the tire was made during the 12th week of 2012 (March 18 - 24, 2012). The tire is a size 255/70R16 and bears a brand name of Cooper Discoverer A/T3. It was made to a specific design or model referred to as Green Tire Specification 2016 ("GTS 2016"). New tires made to GTS 2016 complied with and exceeded the safety and performance regulatory testing, labeling and use requirements existing at the time those tires were manufactured including the requirements found in Federal Motor Vehicle Safety Standards ("FMVSS") 49 C.F.R. § 571.109, § 571.139 and § 574.5.

The Complaint asserted various product liability claims against both Cooper Tire and Jernigan's related to the design, manufacture and distribution of the tire. By way of example, paragraphs 41 and 49 of the Complaint provide:

---

[3] Id. at ¶ 25. Contrary to the Complaint, plaintiff actually neither owned the truck nor bought the tire from Jernigan's. The Tundra was owned by plaintiff's mother-in-law, Rosia Jernigan, and her daughter, Valeria Jernigan. See Plaintiff's February 17, 2020, Response to Defendant Cooper Tire & Rubber Company's Request for Admission, attached as Ex B.

41. At the time the Cooper Tire, Jernigan Auto Sales & Salvage, Inc. and/or fictitious party defendants No. 1- No. 21 described herein, designed, developed, manufactured, engineered, tested, marketed, inspected, distributed and/or sold the subject tire, it had a duty to exercise reasonable care in order to provide a safe product and to manufacture, design, engineer, test, inspect, market, distribute and sell the product so as not to subject occupants of the vehicle on which it was mounted to an unreasonable risk of injury, harm or death. Further, Cooper Tire, Jernigan Auto Sales & Salvage, Inc. and/or fictitious party defendants No. 1- No. 21 described herein had a duty to exercise the same degree of care, diligence and skill in designing, testing, inspecting, manufacturing, marketing and selling the subject tire as other similar entities would have exercised.

. . . .

49. The negligent conduct of Cooper Tire, Jernigan Auto Sales & Salvage, Inc. and/or fictitious party defendants No. 1- No. 21 described herein, in failing to warn of the defective condition of the subject tire was a proximate cause of the severe and permanent injuries sustained by Plaintiff. The wrongful conduct of Cooper Tire, Jernigan Auto Sales & Salvage, Inc. and/or fictitious party defendants No. 1- No. 21 caused or combined and concurred with the conduct of the other Defendants to cause Plaintiff's injuries.

However, paragraph 28 of the Complaint alleged facts against Jernigan's independent of the design, manufacture, warning and distribution product liability claims alleged against both Cooper Tire and Jernigan's. Paragraph 28 alleged Jernigan's should have not have sold but instead should have **"replaced"** the tire given the tire's **"age"** and **"condition:"**

**28. Prior to the aforesaid time and place, Defendant Jernigan Auto Sales & Salvage, Inc and/or fictitious party defendants No. 2- No. 21 described herein mounted the subject tire on Plaintiff's vehicle despite its age. At no time prior to the date of the incident made the basis of this lawsuit did Jernigan Auto Sales & Salvage, Inc inform, warn, or advise the Plaintiff as to the condition of the subject tire, the age of the subject tire, and/or recommend that it not be mounted but replaced.**

Plaintiff's Complaint is dated November 6, 2018. In his February 17, 2020, Response to Defendant Cooper Tire & Rubber Company's Request for Admission, plaintiff revealed for the first time that the tire was not aged or in poor condition but was in fact a **"new"** tire when acquired by Jernigan's from a wholesaler (Harris Tire) and further that the tire was **"new"** when subsequently re-sold and mounted by Jernigan's on the Tundra. For example:[4]

4. Admit both tires on the rear axle of the Toyota Tundra you were driving at the time of the accident were purchased as new tires from Harris Tire in Troy, Alabama.

**Response**: Denied. Plaintiff understands that Defendant Jernigan purchase these tires new from Harris Tire and sold them to Ms. Rosia Jernigan.

....

6. Admit the tire was new when mounted on the Toyota Tundra.

**Response**: Plaintiff has no personal knowledge to be able to admit or deny this paragraph but understands that the Subject Tire was purchased as a new tire from Harris Tire and considered a new tire when mounted. Also, the other rear tire appears to be relatively new. Otherwise, denied.

As set forth in more detail herein, on February 17, 2020, it first became known that the tire

---

[4] See Ex. B.

was new when distributed by Jernigan's, that its **"age"** and **"condition"** were not factors and that Jernigan's was shielded from liability under § 6-5-521 of the Code of Alabama, which prohibits product liability actions against conduit or innocent sellers of a product who are not manufacturers. This action became properly removable at that time.

## GROUNDS FOR REMOVAL

### I. Removal is proper because this Court has subject matter jurisdiction under 28 U.S.C. §§ 1332 and 1441.

This action is removable because it is a civil action "of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Specifically, this Court has jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Cooper Tire and plaintiff and the amount in controversy exceeds $75,000, exclusive of interest and costs.

#### A. There is complete diversity of citizenship between plaintiff and the only properly joined defendant, Cooper Tire.

This action involves "citizens of different states." 28 U.S.C. § 1332(a)(1). Plaintiff is and was at all relevant times a citizen of the State of Alabama.[5] Cooper Tire is and was at all relevant times, a corporation organized under the laws of Delaware with its principal place of business in Ohio. It is therefore considered a citizen of Delaware and Ohio for purposes of diversity jurisdiction. 28 U.S.C. § 1332(c)(1). According to the Complaint, Jernigan's is a corporation organized under the laws of Alabama with its principal place of business in Alabama.[6] It is therefore considered a citizen of Alabama for purposes of diversity jurisdiction. The citizenship of fictitious defendants 1 through 21 are to be disregarded. 28 U.S.C. § 1441(b)(1).

---

[5] Ex. A at ¶ 1.
[6] Id. at ¶ 3.

Jernigan's Alabama citizenship is to be disregarded because it was fraudulently joined to defeat federal diversity jurisdiction. Henderson v. Washington Nat'l Ins. Co., 454 F.3d 1278, 1281 (11th Cir. 2006). A party is considered fraudulently joined when "there is no possibility that the plaintiff would be able to establish a cause of action" against it. Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir. 1983) (superseded by statute on other grounds). The Eleventh Circuit has clarified that "[t]he potential for legal liability must be reasonable, not merely theoretical." Legg v. Wyeth, 428 F.3d 1317, 1325 n.5 (11th Cir. 2005).

It is now clear that there is no reasonable possibility that plaintiff can establish liability against Jernigan's. The Alabama Product Liability Act shields sellers of a product from product liability claims where, as here, the manufacturer can be identified. § 6-5-521(b), Code of Alabama. Mere sellers or distributors of products who do not exercise substantial control over the design and manufacture of the product are due to be dismissed. Pierce v. Amazon.com Servs., Inc., No. 4:19-CV-393-KOB, 2020 WL 374836, at *2 (N.D. Ala. Jan. 23, 2020) (dismissing seller where original manufacturer of product was identified).

Section 6-5-521(b), Code of Alabama, provides that as of 2011:

> No product liability action may be asserted or may be provided a claim for relief against any distributor, wholesaler, dealer, retailer, or seller of a product, or against an individual or business using a product in the production or delivery of its products or services (collectively referred to as the distributor) unless any of the following apply:
>
> (1) The distributor is also the manufacturer or assembler of the final product and such act is causally related to the product's defective condition.
>
> (2) The distributor exercised substantial control over the design, testing, manufacture, packaging, or labeling of the product and such act is causally related to the product's condition.
>
> (3) The distributor altered or modified the product, and the alteration or modification was a substantial factor in causing the harm for which recovery of damages is sought.

> (4) It is the intent of this subsection to protect distributors who are merely conduits of a product. This subsection is not intended to protect distributors from independent acts unrelated to the product design or manufacture, such as independent acts of negligence, wantonness, warranty violations, or fraud.

The Complaint contains no credible allegations that Jernigan's was the assembler of the tire, exercised substantial control over the design, manufacture or labeling of the tire, or altered or modified the new tire before selling it. The only allegations against Jernigan's independent of its role as the mere distributor of the "new" tire are the allegations in paragraph 28 of the Complaint that Jernigan's "mounted the subject tire on Plaintiff's vehicle **despite its age**" and that Jernigan's did not inform plaintiff[7] "**as to the condition of subject tire, the age of the subject tire and/or recommend that it not be mounted but replaced,**" and that Jernigan's should have **"replaced"** the brand new tire.

These allegations in paragraph 28 made the case not removable when the Complaint was filed. Allegations such as Jernigan's mounted the tire **"despite its age"** lead the reader to believe the tire was not new when mounted on the Tundra by Jernigan's but was instead older or used so that its **"age"** and **"condition"** would put a tire seller on notice that it should **"not be mounted but replaced."** These allegations create the appearance that an independent act of negligence existed against Jernigan's as if it had sold a very used tire that was obviously worn out, had little to no tread or had a nail in it. It would be difficult for a party to make the allegations in paragraph 28 in good faith where, as here, the tire was "new" so that its age and condition were unremarkable. This case would have been removable based on the Complaint had plaintiff either alleged the tire was new (which he admitted on February 17, 2020) or, if the tire's age and condition were

[7] As previously shown, plaintiff did not own the Tundra and Jernigan's did not sell the tire to the plaintiff. See Ex. B.

unknown, he simply had not included Jernigan's as a party until the actual facts were discovered. Plaintiff instead pleaded just the opposite.

In addition to suggesting in the Complaint that the age and condition of the tire was an issue when the tire was in fact sold new, plaintiff's July 18, 2019, responses to Cooper Tire interrogatory #1 did not disclose Harris Tire as the seller of the tire or a source of discoverable information:[8]

> 1. State the name, address and telephone number of each person (including medical emergency personnel) who has any discoverable knowledge with respect to the accident. **RESPONSE: Tony Marshall; Garlock Enterprises, Inc d/b/a GEMS Ambulance – PO Box 523, Greenville, AL 36037 (334) 383-9894; Dr. David Porterfield, LV Stabler Memorial Hospital - 29 LV Stabler Drive, Greenville, AL 36037 (334)382-2671**

These discovery responses were served within the one-year removal period. Then, on January 2, 2020, just over one year after the Complaint was filed and more than 2.5 years after the accident, plaintiff, without learning of Harris Tire through formal discovery, issued a subpoena to Harris Tire in Troy, Alabama.

By letters dated January 10, January 30 and February 18, 2020, Cooper Tire requested any documents plaintiff received from Harris Tire. On March 4, 2020, plaintiff produced the documents subpoenaed from Harris Tire. As shown in the Declaration of Charlie Senn, Operations Manager for Harris Tire, these show that on July 23, 2012, Jernigan's bought 2 new tires meeting the description of both tires on the rear axle of the Tundra at the time of the May 8, 2017, accident. Both of these documents reflect transaction "C51762:"

---

[8] See Ex. C.

....

| JERAUNT | C51762 | 255/70TR16 | B | COOPER | 72 | DISCOVERER A/T3 "NEW" | 2 | 272.94 | 18.10 |
|---|---|---|---|---|---|---|---|---|---|

Because plaintiff has now admitted the tire sold by Harris Tire to Jernigan's and re-sold by Jernigan's in 2012 was actually a new tire, there is no reasonable potential for legal liability against Jernigan's. Jernigan's is therefore fraudulently joined and its Alabama citizenship must be disregarded for purposes of removal. As between plaintiff and the only properly joined defendant, Cooper Tire, there is complete diversity of citizenship.

**B. The amount in controversy exceeds $75,000.**

The amount-in-controversy requirement for diversity jurisdiction is satisfied in this case because it is clear that the "matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a).

Although the Complaint does not demand a specific amount of damages, it is "facially apparent" from the pleading itself that the amount in controversy exceeds the $75,000 jurisdictional minimum. Roe v. Michelin N. Am., Inc., 613 F.3d 1058, 1061–62 (11th Cir. 2010).

In this case, plaintiff specifically seeks to recover medical expenses of $230,000 and future lost wages of $486,720.

Plaintiff also seeks to recover unspecified amount for punitive damages, which must be considered in any calculation of the amount in controversy. Holley Equip. Co. v. Credit All. Corp., 821 F.2d 1531, 1535 (11th Cir. 1987) ("When determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered, . . . unless it is apparent to a legal certainty that such cannot be recovered") (citations omitted). Although Cooper Tire denies liability in this matter and may contest some or all of plaintiff's damages claims, it is abundantly clear that more than $75,000 is in controversy in this case. Roe, 613 F.3d at 1062.

**II. Cooper Tire's removal is timely.**

This removal is timely under 28 U.S.C. § 1446(b)(3), which provides that a case which is not initially removable may be removed by filing a notice of removal "within thirty days after receipt of a copy of an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable." "Other paper" has been judicially defined to include responses to requests for admission and other discovery documents. See Lowery v. Ala. Power Co., 483 F.3d 1184, 1213 n.62 (11th Cir. 2007) (citing Wilson v. Gen. Motors Corp., 888 F.2d 779, 780 (11th Cir. 1989)). Here, the "other paper" was plaintiff's February 17, 2020, Response to Cooper Tire's Request for Admission[9] in which plaintiff admitted for the first time that the tire Jernigan's sold and mounted on the Tundra was actually a "new" tire making Jernigan's the mere conduit of a product that Alabama's innocent seller law specifically is designed to protect. Cooper Tire has filed this notice of removal within 30 days after it received the "other paper" from which it ascertained that this action was removable.

9 Ex. B.

Cooper Tire's removal also is timely under the one-year time limit set forth in 28 U.S.C. § 1446. The one-year limit, as revised by Congress in 2011, no longer applies in cases where "the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1). "When it comes to bad faith ... the question is what motivated the plaintiff in the past—that is, whether the plaintiff's litigation conduct meant 'to prevent a defendant from removing the action.'" Hoyt v. Lane Constr. Corp., 927 F.3d 287, 293 (5th Cir. 2019) (affirming district court's order finding plaintiff acted in bad faith and denying motion to remand). Other courts considering the issue "have likewise focused on whether a plaintiff's conduct demonstrates manipulation of the removal rules in order to prevent a defendant's removal." Jones v. Ramos Trinidad, 380 F.Supp.3d 516, 521 n.50 (E.D. La. 2019) (collecting cases). A presumption of bad faith arises where the plaintiff does not actively litigate against a non-diverse party. E.H.S. by N. v. BNSF Ry. Co., No. 1:19-CV-00141-JAR, 2019 WL 3934472, at *2 (E.D. Mo. Aug. 20, 2019); Hoyt, 927 F.3d at 292 (affirming district court's finding of bad faith where the plaintiffs had "only half-heartedly" pursued claims against the fraudulently joined defendant).

Plaintiff's Complaint alleged facts (i.e., because of tire's **"age"** and **"condition"** it should have been **"replaced"**) directly contradicted by facts plaintiff admitted after the one-year removal period (i.e., tire was **"new"**). The plaintiff clearly has a close relationship with Jernigan's. Jernigan's is family-owned business located about a mile from plaintiff's residence in Union Springs. Plaintiff resides at 412 Jernigan Road in Union Springs.[10] Plaintiff is married to the niece of one of Jernigan's owners, Joe Jernigan.[11] The Tundra plaintiff was driving was owned by his

[10] Ex. C at ¶ 7.

[11] See Obituary of Curtis Dean Jernigan, attached as Ex. E; Articles of Incorporation of Jernigan's Auto Sales & Salvage, Inc., attached as Ex. F.

mother-in-law, Rosia Jernigan, who purportedly gave Mr. Marshall permission to drive the vehicle on the day of the accident.[12] Rosia Jernigan was the widow of Joe Jernigan's brother, Curtis Dean Jernigan. Plaintiff readily admits he **"is related to all Jernigans who live in Bullock County by marriage."**[13]

Despite living on Jernigan Road, being married to the niece of one of Jernigan's owners, having borrowed the Tundra from its owner and his mother-in-law, Rosia Jernigan, and being related by marriage "to all Jernigans who live in Bullock County," plaintiff apparently did nothing either to discover or to reveal to Cooper Tire the true source, condition or age of the tire during the 18 months between the May 2017 accident and the November 2018 Complaint or during the additional 12 months (first year) the case was pending. It was not until just after the one-year time limit in § 1446 had passed, and without any formal discovery from Jernigan's, that plaintiff admitted the tire had actually been new when it was sold by Jernigan's in 2012, almost 5 years before the May 2017 accident.[14]

Not only are the owners of Jernigan's part of the plaintiff's family, but Harris Tire is well known to and has a regular, ongoing business relationship with Jernigan's. Jernigan's has purchased hundreds of tires from Harris Tire. Charlie Senn of Harris Tire knows Joe Jernigan, Jr. personally and members of Harris Tire's sales team deals regular with Joe Jernigan, Sr.[15]

Also, plaintiff only half-heartedly, at best, pursued Jernigan's during the first year this case was pending. The accident took place on May 8, 2017. The Complaint was not filed for another 18 months on November 6, 2018. Cooper Tire timely filed its Answer to plaintiff's Complaint on

[12] Ex. B.
[13] Ex. C ¶ 19.
[14] Ex. B.
[15] Ex. D.

December 10, 2018. Jernigan's Answer was due to be filed on or about December 17, 2018. Jernigan's did not timely Answer or otherwise respond to the Complaint. As of the filing of this notice of removal, Jernigan's has never responded to the Complaint. Plaintiff has never started default proceedings. Plaintiff also has made little or no effort to obtain discovery from Jernigan's, who never responded to the discovery requests plaintiff served with the Complaint. As of this filing, plaintiff has never moved to compel responses to those long overdue requests.

Plaintiff should not be able to prevent Cooper Tire from exercising its Congressionally-created right to federal jurisdiction by pleading incorrect facts against his uncle-in-law's in-state, non-diverse company then not actively pursuing or disclosing the true facts which make the case removable until after the one-year removal period expired. The U.S. Supreme Court recognized over 100 years ago that "Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court…." Wecker v. Nat'l Enameling & Stamping Co., 204 U.S. 176, 186 (1907).

**III. All other prerequisites for removal are satisfied.**

The United States District Court for the Middle District of Alabama, Northern Division, embraces the county in which the state court action was filed. Therefore, this Court is a proper venue for this action pursuant to 28 U.S.C. §§ 81(b)(1), 1441(a).

Cooper Tire is the only properly joined defendant and as the removing party obviously consents to this removal. Consent of the fraudulently joined defendants is not required. Maxwell v. E-Z-Go, a Div. of Textron, Inc., 843 F.Supp.2d, 1209, 1213 (M.D. Ala. 2012) ("A fraudulently joined party is not properly joined and, accordingly, need not join or consent to the removal").

Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served upon

Cooper Tire is attached as Exhibit G. Pursuant to 28 U.S.C. § 1446(d), a Notice of Filing Notice of Removal, attached as Exhibit H, together with this Notice of Removal, is being served upon counsel for plaintiff and Jernigan's. The Notice of Filing Notice of Removal is being filed with the Clerk of the Circuit Court of Bullock County, Alabama.

**CONCLUSION**

Cooper Tire hereby removes this action from the Circuit Court of Bullock County, Alabama to this Court, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

Respectfully submitted this the 16th day of March 2020.

Justin T. McDonald

One of the Attorneys for Defendant
Cooper Tire & Rubber Company

OF COUNSEL:

Gerald C. Swann, Jr.
BALL, BALL, MATTHEWS & NOVAK, P.A.
445 Dexter Avenue, Suite, 9045
Post Office Box 2148
Montgomery, Alabama 36102-2148
(334) 387-7680
(334) 387-3222 (fax)
gswann@ball-ball.com

Justin T. McDonald
R. Thomas Warburton
Bradley Arant Boult Cummings LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2104
(205) 521-8000
jmcdonald@bradley.com
twarburton@bradley.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 16th day of March 2020, I served a copy of the above and foregoing document on all counsel by placing a true and correct copy of same in the United States Mail, proper postage affixed thereto, and addressed as follows:

Christina D. Crow, Esq.
JINKS CROW & DICKSON, P.C.
P.O. Box 350
Union Springs, AL 36089
Phone: (334) 738-4225
ccrow@jinkslaw.com

Walter E. McGowan, Esq.
GRAY LANGFORD SAPP MCGOWAN GRAY & NATHANSON
P.O. Box 830239
Tuskegee, AL 36083-0239
Phone: (334) 727-4830
wem@glsmgn.com

Frank M. Wilson Esq.
COPELAND FRANCO SCREWS & GILL PA
P.O. Box 347
Montgomery, AL 36102-2389
Phone: (334) 834-1180
wilson@copelandfranco.com

Jernigan Auto Sales & Salvage, Inc.
c/o Sidney Jernigan, Jr.
664 Aberfoil Road
Union Springs, AL 36089

Justin T. McDonald
~~OF~~ COUNSEL



4832-4940-8438.3